UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARLENE JONES,

                                        Plaintiff,

                -vs-                                        12-CV-1238-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                                        Defendant.

_____

APPEARANCES:    LAW OFFICES OF KENNETH HILLER (KENNETH R. HILLER, ESQ.
                And JAYA ANN SHURTLIFF, ESQ., of Counsel), Amherst, New York,
                for Plaintiff

                WILLIAM J. HOCHUL, JR., United States Attorney (MARY CLARE
                KANE, Assistant United States Attorney, of Counsel), Buffalo, New
                York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated April 23, 2015 (Item

19).

        Plaintiff Darlene Jones initiated this action on December 13, 2012, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") and Supplemental Security

_____

[1]At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and
was properly named in the complaint as the defendant under 42 U.S.C. § 405(g).  On February 14, 2013,
Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the
defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection
shall survive notwithstanding any change in the person occupying the office of Commissioner of Social
Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure.  For
continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 9, 11).  For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on December 18, 1961 (Tr. 121).[2]  She filed applications for SSDI and SSI benefits in May 2009 alleging disability due to bipolar disorder, obesity, anemia, asthma, and epileptic seizures, with an onset date of January 19, 2009 (*id.*).  The applications were denied administratively on September 14, 2009 (Tr. 65-79).  Plaintiff requested a hearing, which was held on January 19, 2011, before Administrative Law Judge ("ALJ") Timothy M. Guan (Tr. 39-60).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Vocational expert ("VE") Jay Steinbrenner also appeared and testified.

On February 23, 2011, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 12-35).  Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (identified by the ALJ as asthma, obesity, bipolar disorder, depressive disorder and borderline intellectual functioning), while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically

---

[2]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 6).

equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 18-22).  The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including the objective medical evidence and plaintiff's testimony and written statements about her symptoms, and determined that plaintiff had the residual functional capacity ("RFC") to perform work at the "light"[3] exertional level with certain non-exertional limitations, including the ability to only occasionally understand, remember and carry out complex and detailed tasks; the need to avoid concentrated exposure to fumes, dust, and odors; and the ability to only occasionally interact with the public (Tr. 22-27).  Relying on the VE's testimony indicating that an individual of plaintiff's age, education, and work experience, with similar RFC and limitations, would be able to perform the physical and mental demands of plaintiff's past relevant work as an electronics assembler and lobby attendant, and alternatively, would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and using Rule 202.20 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids") as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 28-29).

---

[3]"Light work" is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ's decision became the final decision of the Commissioner on October 26, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to properly assess plaintiff's mental and physical RFC; (2) failed to properly assess plaintiff's ability to perform her past relevant work; (3) improperly relied upon the VE's testimony; and (4) failed to properly assess plaintiff's credibility.  *See* Items 11-1, 14, 18.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Items 9, 17.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from

the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, a claimant must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the

residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a

vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Guan determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since January 19, 2009, the alleged onset date (Tr. 18).   At step two, the ALJ determined that plaintiff's impairments are "severe" as that term is defined in the regulations because they "cause more than minimal functional limitations or significant work-related limitations of function in [plaintiff]'s ability to perform basic work-related activities …" (*id.*).

At step three, the ALJ found that plaintiff's physical impairments, considered alone or in combination, did not meet or equal the criteria of any of listed impairment as set forth in the regulations then in effect.   Relying on the report of consultative examiner Kathleen Kelley, M.D. (Tr. 302-06), the ALJ found that plaintiff's asthma with obesity was "not … near listing severity" (Tr. 19), considering the criteria under Listing 3.03 (Asthma).

With regard to plaintiff's mental impairments, the ALJ considered the criteria for Listings 12.04 (Affective Disorders), and 12.05 (Mental Retardation) under the version of the Social Security regulations then in effect.   To satisfy the criteria of Listing 12.04, the claimant must show (among other things) that his or her mental impairment resulted in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B) (Paragraph "B" criteria).  A claimant can also satisfy the criteria of Listing 12.04 by presenting a medically documented history of a chronic affective disorder of at least two years' duration, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(C) (Paragraph "C" criteria).  Listing 12.05 requires:

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
Or
B. A valid verbal, performance, or full scale IQ of 59 or less;
Or
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
Or
D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of [the Paragraph "B" criteria listed above].

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Relying primarily on the report of licensed psychologist Thomas Ryan, Ph.D., who conducted a consultative mental health evaluation of plaintiff on June 12, 2009 (Tr. 294-97), ALJ Guan found that plaintiff had mild restriction in the activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence or pace; and no episodes of decompensation of extended

duration (Tr. 19-20).  The ALJ found no evidence of record to establish the presence of any of the § 12.04(C) criteria (Tr. 21).  With regard to the further requirements of Listing 12.05, the ALJ found that plaintiff achieved a valid full-scale Wechsler's Adult Intelligence Scale-Fourth Edition ("WAIS-IV") IQ score of 73, and that she "maintains the capacity to function in society that is not indicative of a person who has mild mental retardation, but rather exhibits borderline intellectual functioning" (Tr. 21).  The ALJ also noted the Psychiatric Review Technique Form ("PRTF") dated September 11, 2009, submitted by non-examining review psychiatrist H. Tzetzo, M.D., as further confirmation of plaintiff's "mild to moderate" mental functional limitations (Tr. 22, 348-59).  Accordingly, the ALJ determined that plaintiff's mental impairments did not meet or equal the severity of Listings 12.04 or 12.05.

The ALJ then found that plaintiff had the RFC for light work, limited by the ability to only occasionally understand, remember and carry out complex and detailed tasks; the need to avoid concentrated exposure to fumes, dust, and odors; and the ability to only occasionally interact with the public (Tr. 22-27).  In making this finding, the ALJ thoroughly discussed the medical evidence in the record, along with plaintiff's hearing testimony regarding her past work experience, activities of daily living, and the functional limitations caused by the symptoms of her impairments.  Based upon his consideration of this evidence, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment (Tr. 22).

At step four of the sequential evaluation, the ALJ found that plaintiff's past jobs as an electronics assembler and lobby attendant did not require the performance of work-

related activities that would be precluded by her RFC for light work with the environmental limitations assessed.  The ALJ noted his reliance on the "persuasive" testimony of the VE, and further, that the VE's testimony supported the alternative finding, at step five of the sequential evaluation, that there were other jobs existing in substantial numbers in the national economy that plaintiff could perform considering her age (47 at the time of the ALJ's decision), education (at least high school), work experience, and RFC with non-exertional limitations (Tr. 28-29).  The ALJ then relied on Rule 202.20 of the Grids as a framework for decisionmaking, finding plaintiff "not disabled" within the meaning of the Act at any time during the relevant period (Tr. 29).

## IV.   Plaintiff's Motion

### A.   RFC

Plaintiff contends that the Commissioner's determination should be reversed because the ALJ failed to properly assess plaintiff's mental and physical RFC.  The regulations provide basic guidelines for the adjudicator to follow in assessing the claimant's RFC, defined generally as "the most [the claimant] can do despite [his or her physical and mental] limitations."   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   Physical RFC is assessed in terms of the claimant's "ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions …," 20 C.F.R. §§ 404.1545(b), 416.945(b), while mental RFC is assessed in terms of the claimant's "ability to carry out certain mental activities, such as … understanding, remembering, and carrying out instructions, and …  responding

appropriately to supervision, coworkers, and work pressures in a work setting ...."   20 C.F.R. §§ 404.1545(c), 416.945(c).

The Social Security Administration Rulings provide further guidance for adjudicators to follow in making the RFC determination.   For example, SSR 96–8p provides that the ALJ's RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including physical abilities (such as sitting, standing, walking, lifting, carrying, pushing, or pulling), mental abilities (such as understanding, remembering, and carrying out instructions), and other abilities affected by the impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) (citing subpar. (b), (c), and (d) of 20 C .F.R. §§ 404.1545 and 416.945).   SSR 96–8p also states that the assessment of mental RFC at steps four and five of the sequential evaluation process "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments...."   *Id.* at *4.

Plaintiff contends that the ALJ failed to conduct the function-by-function analysis required by these regulations and rulings, and discounted substantial evidence of the work-related functional limitations caused by plaintiff's impairments.   However, as explained by the Second Circuit, an ALJ's failure to express a claimant's RFC in a function-by-function analysis does not necessarily mandate remand, so long as the RFC determination is set forth with sufficient specificity to permit "meaningful judicial review" as to whether it is based on proper legal standards and supported by substantial evidence.   *Cichocki v.*

*Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *see also Darby v. Colvin*, 2013 WL 5291113, at *4 (Sept. 18, 2013).

In this case, the court's review reveals that the ALJ thoroughly considered the medical source evidence in the record regarding plaintiff's physical and mental abilities and limitations in making his RFC assessment.  For example, in assessing plaintiff's work-related physical abilities, the ALJ referred to Dr. Kelley's report of her consultative internal medicine examination of plaintiff on July 10, 2009, indicating that plaintiff had certain limitations with regard to working around heights, sharp implements, and heavy equipment; she needed to avoid smoke, respiratory irritants, and overexertion that could lead to shortness of breath; and she needed to take breaks as necessary (Tr. 302-06).  The ALJ also discussed the Physical Residual Functional Capacity Assessment completed on September 12, 2009, by "Single Decision Maker" G. Grabow, indicating that plaintiff's medical records revealed no exertional, postural, manipulative, or communicative limitations (Tr. 27, 330-35).

With regard to mental RFC, the ALJ discussed the documentation of plaintiff's mental care provided by Dr. Rashida Khanam, M.D., plaintiff's treating psychiatrist at Niagara Frontier Psychiatric Associates between May 2009 and February 2010, reporting the results of mental status examinations consistently within normal limits  (Tr. 396-403). As discussed above, the ALJ also considered the results of Dr. Ryan's consultative mental health evaluation indicating that plaintiff demonstrated no significant limitations in her ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, and maintain a regular schedule (Tr. 26, 296).  The ALJ specifically noted Dr. Ryan's assessment that plaintiff demonstrated the ability to make adequate decisions

and relate adequately with others despite mild to moderate limitations in her ability to learn new tasks, perform complex tasks, and deal with stress, resulting in an overall evaluation "consistent with psychiatric problems that might interfere to some degree on a daily basis, but appear to be fairly well controlled with medication" (Tr. 296; *see* Tr. 26-27).  In addition, the ALJ discussed the Mental Residual Functional Capacity Assessment completed by consultative review psychiatrist H. Tzetzo on September 11, 2009 in conjunction with the PRTF referred to above, in which Dr. Tzetzo concurred with Dr. Ryan's assessment that plaintiff had no more than moderate limitations in her mental residual functional capacity (Tr. 27, 326-28).

Based on this review, the court concludes that the ALJ's determination of plaintiff's capacity for a limited range of light work, including the ability to occasionally interact with the public and occasionally understand, remember, and carry out complex and detailed tasks, was performed in accordance with the requirements of the Social Security regulations and rulings governing the assessment of a claimant's physical and mental residual functional capacity, and is supported by substantial evidence in the record. Accordingly, plaintiff is not entitled to relief on this ground.

### B.    Past Relevant Work

Plaintiff also contends that the ALJ erred at step four of the sequential evaluation when he determined that plaintiff was capable of performing her past relevant work. According to plaintiff, her testimony describing her work at "Avid Engineering" in 1997-99 was mischaracterized by the VE as meeting the requirements of the job of electronics

assembler, as described in the U.S. Department of Labor Dictionary of Occupational Titles ("DOT").

At step four, it remains the claimant's burden to show an inability to return to her past relevant work, described in the regulations as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 426.960(b)(1); *see Daniels v. Colvin*, 2014 WL 2207989, at *9 (W.D.N.Y. May 28, 2014). The regulations further advise claimants that, in determining whether this burden has been met, the Social Security Administration:

> … will ask you for information about work you have done in the past. We may also ask other people who know about your work. We may use the services of vocational experts or vocational specialists, or other resources, such as the [DOT] and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his [or her] past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. §§ 404.1560(b)(2), 426.960(b)(2).

Because the decision as to whether the claimant retains the functional capacity to perform past relevant work "has far-reaching implications" and is often one of the controlling issues in the disability determination, it "must be developed and explained fully" by the ALJ, and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62, 1982 WL 31386, at *3 (S.S.A.

1982); *see also Kerulo v. Apfel*, 1999 WL 813350, at *8 (S.D.N.Y. Oct.7, 1999).  The guidance further advises that, when the ALJ finds that a claimant retains the functional capacity to perform past relevant work, the determination or decision must contain the following specific findings of fact:

> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4; *see also Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (ALJ's inquiry requires separate evaluations of claimant's previous specific job and the job as it is generally performed; DOT describes jobs as generally performed, while VE is often called upon to explain unique aspects of particular jobs, and deviations from the DOT in VE's testimony do not necessarily conflict since specific jobs as performed often differ from those jobs as they are generally performed).

Upon review of the record in this case, it is apparent to the court that the ALJ's determination of plaintiff's capacity for a return to her past relevant work was accomplished in accordance with the requirements of the regulations, administrative rulings, and pertinent case law.  Specifically with regard to plaintiff's claim that the ALJ committed error by relying on the VE's characterization of plaintiff's work at Avid Engineering, plaintiff testified at the hearing that she worked on an assembly line at Avid making parts for "computers and electronic doors" (Tr. 44).  She would sit at a machine and put the parts on racks, and then remove the racks and put them into "holding bars" for further processing (*id.*).  She testified that the heaviest weight she was required to lift was twenty-five pounds.  The VE testified

that this description met the classification of "electronics assembler" under section 729.684-026 of the DOT, which provides the following job description:

> Assembles protection, communication, and control devices, such as switches, relays, rheostats, transmitters, and switchboards, as laid out in drawings and wiring diagrams: Assembles in predetermined order, contact fingers, shafts, springs, gears, coils, terminals, and push buttons, using handtools, hand arbor press, and assembly fixtures.  Fastens units in specified locations in switchbox or case.  Cuts, strips, and mounts wires to connect electrical units, using soldering iron, staking machine, and plugging devices.  Connects lead wires to buzzer, ohmmeter, or resistance tester to test connections for resistance, shorts, and grounds.  May adjust contacts, springs, and shafts to meet specifications.

Dictionary of Occupational Titles, U.S. Department of Labor, Office of Administrative Law Judges, App. C (4th ed. 1991).  The VE testified that this job is listed as semi-skilled light work, with an SVP of 4[4] (Tr. 54).  Based on this testimony, the ALJ determined that the work-related activities of the electronics assembler job, as it was actually performed by plaintiff, would not be precluded by her RFC for light work with the identified non-exertional limitations (Tr. 28).  In the court's view, this determination represents the ALJ's reasonable reliance on the VE's expertise in evaluating the accuracy of plaintiff's description of her past work, as contemplated by the governing legal standards and administrative guidance.

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ erred in assessing plaintiff's ability to return to her past relevant work.

---

[4]Specific Vocational Preparation ("SVP") is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles, U.S. Department of Labor, Office of Administrative Law Judges, App. C (4th ed. 1991).  Level 4 is designated for jobs requiring "[o]ver 3 months up to and including 6 months" of specific vocational preparation time.  *Id.*

### C.      VE Testimony

As indicated, the ALJ also made the alternative finding of "not disabled" at step five of the sequential evaluation (*see* Tr. 28-29).  This finding was based on the VE's testimony in response to a hypothetical question regarding whether there were any jobs existing in substantial numbers in the national or regional economies that an individual of plaintiff's age with similar education, work experience, and functional capacity with non-exertional limitations, could do (*see* Tr. 55-58).

Plaintiff contends that this was error because the RFC finding that formed the basis for the hypothetical question posed to the VE was incomplete and not supported by substantial evidence.   However, as discussed at further length above, the ALJ's determination of plaintiff's capacity for a limited range of light work, including the ability to occasionally interact with the public and occasionally understand, remember, and carry out complex and detailed tasks, was based upon proper application of the pertinent legal standards and is supported by substantial evidence in the record.

Accordingly, plaintiff is not entitled to relief on this ground.

### D.      Credibility

Finally, plaintiff contends that the ALJ failed to properly assess the credibility of her testimony and statements concerning the intensity, persistence and limiting effects of her symptoms.   The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing

*Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")).   The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); *see also Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process provides further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered"

> or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96–7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged (which included lapses of memory and concentration; the inability to do more than one task at a time; dizziness; and mood swings), but her statements concerning the intensity, persistence and limiting effects of these symptoms was not credible to the extent they were inconsistent with the ALJ's RFC assessment. The ALJ referred to plaintiff's hearing testimony regarding her activities of daily living, including working at K-Mart; helping her fiancé with cleaning, cooking, and shopping; watching television and listening to the radio; reading; and caring for her own personal grooming needs. The ALJ also referenced the extensive medical records (including the medical source evidence discussed above) with regard to medication and other treatment to address the limiting effects of her mental and physical impairments, and the reports of examining and reviewing consultative medical sources which consistently indicated mild to moderate limitation of function as a result of the symptoms caused by her impairments. This assessment is supported by substantial evidence in the case record, and is  sufficiently specific to make clear to the court, and to plaintiff, the reasons for the weight given to plaintiff's testimony and statements concerning her symptoms.

Accordingly, upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of

the Social Security Act, its implementing Regulations, and the weight of controlling authority.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 11) is denied, the Commissioner's motion for judgment on the pleadings (Item 9) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

                             \s\ John T. Curtin
                                  JOHN T. CURTIN
                      United States District Judge

Dated:   June 9 , 2015
p:\pending\2012\12-1238.ssdi.si.jun2.2015